1  Benjamin Heikali (SBN 307466)
**FARUQI & FARUQI, LLP**
2  10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
3  Telephone: (424) 256-2884
Facsimile: (424) 256-2885
4  E-mail:  bheikali@faruqilaw.com

5  [Additional Attorneys on Signature Page]

6  *Attorney for Plaintiff*

7

8  ### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA

9   RICHARD STEIN, Individually and on          )
Behalf of All Others Similarly Situated,       )
10                                             )
                                               )
11              Plaintiff,                      )     Case No. 3:21-cv-00393
                                               )
            v.                                  )   **CLASS ACTION COMPLAINT FOR**
12                                             )   **VIOLATIONS OF SECTIONS 14(a) AND**
   XILINX, INC., DENNIS SEGERS,                 )   **20(a) OF THE SECURITIES**
13  VICTOR PENG, RAMAN CHITKARA,                )   **EXCHANGE ACT OF 1934**
   SAAR GILLAI, RONALD S. JANKOV,               )
14  MARY LOUISE KRAKAUER, THOMAS                )   **JURY TRIAL DEMANDED**
   H. LEE, JON A. OLSON and ELIZABETH           )
15  VANDERSLICE,                                )
                                               )
16              Defendants.                     )

17

18

19

20

21

22

23

24

25

26

27

28  **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF**
**THE SECURITIES EXCHANGE ACT OF 1934**
**No. 3:21-cv-00393**

Plaintiff Richard Stein ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.      This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Xilinx, Inc. ("Xilinx" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Xilinx, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed merger (the "Proposed Transaction") between Xilinx and Advanced Micro Devices, Inc. ("AMD").

2.      On October 26, 2020, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand to receive 1.7234 shares of AMD common stock for each share of Xilinx stock they own (the "Merger Consideration"). Upon completion of the merger, Xilinx shareholders will own approximately 26% and AMD shareholders will own approximately 74% of the combined company.

3.      On December 4, 2020, in order to convince Xilinx shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading Form S-4 (the "S-4") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.  The materially incomplete and misleading preliminary S-4 violates both Regulation G (17 C.F.R. § 244.100) and SEC Rule 14a-9 (17 C.F.R. § 240.14a-9), each of which constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act.  On January 14, 2020, the Board authorized the filing of a Form S-4/A that did not correct the materially incomplete and misleading nature of the S-4.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**No. 3:21-cv-00393**

4.      While touting the fairness of the Merger Consideration to the Company's shareholders in the S-4, Defendants have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Transaction, thereby violating SEC rules and regulations and rendering certain statements in the S-4 materially incomplete and misleading.

5.      In particular, the S-4 contains materially incomplete and misleading information concerning: (i) the financial projections for the Company that were prepared by the Company and relied on by Defendants in recommending that Xilinx shareholders vote in favor of the Proposed Transaction; and (ii) the summary of certain valuation analyses conducted by Xilinx's financial advisors, Morgan Stanley & Co. LLC ("Morgan Stanley") and BofA Securities, Inc. ("BofA") in support of their opinion that the Merger Consideration is fair to shareholders, on which the Board relied.

6.      It is imperative that the material information that has been omitted from the S-4 is disclosed prior to the forthcoming vote to allow the Company's shareholders to make an informed decision regarding the Proposed Transaction.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violation of (i) Regulation G (17 C.F.R. § 244.100) and (ii) Rule 14a-9 (17 C.F.R. § 240.14a-9). Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless, and until, the material information discussed below is disclosed to Xilinx shareholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**No. 3:21-cv-00393**

Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Xilinx maintains its principal executive offices in this District.

## PARTIES

11.     Plaintiff is, and at all relevant times has been, a holder of Xilinx common stock.

12.     Defendant Xilinx is incorporated in Delaware and maintains its principal executive offices at 2100 Logix Drive, San Jose, California 95124.  The Company's common stock trades on the NASDAQ under the ticker symbol "XLNX."

13.     Individual Defendant Dennis Segers is Xilinx's Chairman and has been a director of Xilinx at all relevant times.

14.     Individual Defendant Victor Peng is Xilinx's Chief Executive Officer and has been a director of Xilinx at all relevant times.

15.     Individual Defendant Raman Chitkara has been a director of Xilinx at all relevant times.

16.     Individual Defendant Saar Gillai has been a director of Xilinx at all relevant times.

17.     Individual Defendant Ronald S. Jankov has been a director of Xilinx at all relevant times.

18.     Individual Defendant Mary Louise Krakauer has been a director of Xilinx at all

- 3 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**No. 3:21-cv-00393**

relevant times.

19.     Individual Defendant Thomas H. Lee has been a director of Xilinx at all relevant times.

20.     Individual Defendant Jon A. Olson has been a director of Xilinx at all relevant times.

21.     Individual Defendant Elizabeth Vanderslice has been a director of Xilinx at all relevant times.

22.     The Individual Defendants referred to in paragraphs 13-21 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Xilinx (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

24.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable.  As of November 25, 2020, there were approximately 245,000,000 shares of Xilinx common stock outstanding, held by hundreds of individuals and entities scattered throughout the country.  The actual number of public shareholders of Xilinx will be ascertained through discovery;

b.     There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)     whether Defendants disclosed material information that includes non-GAAP financial measures without providing a reconciliation of the same non-GAAP financial measures to their most directly

- 4 -
**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

ii)      whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the S-4 in violation of Section 14(a) of the Exchange Act;

iii)     whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iv)      whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading S-4.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.      A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

No. 3:21-cv-00393

1

**SUBSTANTIVE ALLEGATIONS**

2

**I.      The Proposed Transaction**

3      25.    Xilinx is a technology company that designs and develops programmable devices

4 and associated technologies. In additional to its programmable platforms, Xilinx also provides

5 design services, customer training, field engineering and technical support.

6      26.    On October 27, 2020, Xilinx and AMD issued a joint press release announcing

7 the Proposed Transaction, which states in pertinent part:

8
9
10
11
12
13

> SILICON VALLEY, Calif., Oct. 27, 2020 (GLOBE NEWSWIRE) -- AMD
> (NASDAQ: AMD) and Xilinx (NASDAQ: XLNX) today announced they have
> entered into a definitive agreement for AMD to acquire Xilinx in an all-stock
> transaction valued at $35 billion. The combination will create the industry's leading
> high performance computing company, significantly expanding the breadth of
> AMD's product portfolio and customer set across diverse growth markets where
> Xilinx is an established leader. The transaction is expected to be immediately
> accretive to AMD margins, EPS and free cash flow generation and deliver industry-
> leading growth.

14
15
16
17
18

> The acquisition brings together two industry leaders with complementary product
> portfolios and customers. AMD will offer the industry's strongest portfolio of
> high performance processor technologies, combining CPUs, GPUs, FPGAs,
> Adaptive SoCs and deep software expertise to enable leadership computing
> platforms for cloud, edge and end devices. Together, the combined company will
> capitalize on opportunities spanning some of the industry's most important
> growth segments from the data center to gaming, PCs, communications,
> automotive, industrial, aerospace and defense.

19
20
21
22
23
24
25

> "Our acquisition of Xilinx marks the next leg in our journey to establish AMD as
> the industry's high performance computing leader and partner of choice for the
> largest and most important technology companies in the world," AMD President
> and CEO Dr. Lisa Su said. "This is truly a compelling combination that will
> create significant value for all stakeholders, including AMD and Xilinx
> shareholders who will benefit from the future growth and upside potential of the
> combined company. The Xilinx team is one of the strongest in the industry and
> we are thrilled to welcome them to the AMD family. By combining our world-
> class engineering teams and deep domain expertise, we will create an industry
> leader with the vision, talent and scale to define the future of high performance
> computing."

26
27

> "We are excited to join the AMD family. Our shared cultures of innovation,
> excellence and collaboration make this an ideal combination. Together, we will

28

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF**
**THE SECURITIES EXCHANGE ACT OF 1934**

**No. 3:21-cv-00393**

lead the new era of high performance and adaptive computing," said Victor Peng, Xilinx president and CEO. "Our leading FPGAs, Adaptive SoCs, accelerator and SmartNIC solutions enable innovation from the cloud, to the edge and end devices. We empower our customers to deploy differentiated platforms to market faster, and with optimal efficiency and performance. Joining together with AMD will help accelerate growth in our data center business and enable us to pursue a broader customer base across more markets."

With a combined team of 13,000 talented engineers and over $2.7 billion of annual1 R&D investment, AMD will have additional talent and scale to deliver an even stronger set of products and domain-specific solutions.

**Additional Transaction Details**
Under the terms of the agreement, Xilinx stockholders will receive a fixed exchange ratio of 1.7234 shares of AMD common stock for each share of Xilinx common stock they hold at the closing of the transaction. Based on the exchange ratio, this represents approximately $143 per share of Xilinx common stock2. Post-closing, current AMD stockholders will own approximately 74 percent of the combined company on a fully diluted basis, while Xilinx stockholders will own approximately 26 percent. The transaction is intended to qualify as a tax-free reorganization for U.S. federal income tax purposes.

AMD expects to achieve operational efficiencies of approximately $300 million within 18 months of closing the transaction, primarily based on synergies in costs of goods sold, shared infrastructure and through streamlining common areas.

The transaction has been unanimously approved by the AMD and Xilinx Boards of Directors. The acquisition is subject to approval by AMD and Xilinx shareholders, certain regulatory approvals and other customary closing conditions. The transaction is currently expected to close by the end of calendar year 2021. Until close, the parties remain separate, independent companies.

**Management and Board of Directors**
Dr. Lisa Su will lead the combined company as CEO. Xilinx President and CEO, Victor Peng, will join AMD as president responsible for the Xilinx business and strategic growth initiatives, effective upon closing of the transaction. In addition, at least two Xilinx directors will join the AMD Board of Directors upon closing.

**Advisors**
Credit Suisse and DBO Partners are acting as financial advisors to AMD and Latham & Watkins LLP is serving as its legal advisor. Morgan Stanley is acting as lead financial advisor to Xilinx. BofA Securities is also acting as a financial advisor and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal counsel.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**No. 3:21-cv-00393**

**Transaction Website**

For more information about the transaction investors are encouraged to visit http://ir.amd.com which will be used by AMD to disclose information about the transaction.

**Conference Call and Webcast Details**

AMD will hold a conference call for the financial community at 8:00 AM ET (5:00 AM PT) today to discuss its third quarter 2020 financial results and plans to acquire Xilinx. AMD will provide a real-time audio broadcast of the teleconference on the Investor Relations page of its website at www.amd.com. The webcast will be available for 12 months after the conference call.

**About AMD**

For more than 50 years AMD has driven innovation in high performance computing, graphics and visualization technologies — the building blocks for gaming, immersive platforms and the data center. Hundreds of millions of consumers, leading Fortune 500 businesses and cutting-edge scientific research facilities around the world rely on AMD technology daily to improve how they live, work and play. AMD employees around the world are focused on building great products that push the boundaries of what is possible. For more information about how AMD is enabling today and inspiring tomorrow, visit the AMD (NASDAQ: AMD) website, blog, Facebook and Twitter pages.

**About Xilinx**

Xilinx develops highly flexible and adaptive processing platforms that enable rapid innovation across a variety of technologies - from the cloud to the edge and to the endpoint. Xilinx is the inventor of the FPGA and Adaptive SoCs, designed to deliver the most dynamic processor technology in the industry. We partner with our customers to create scalable, differentiated and intelligent solutions to enable the adaptable, intelligent and connected world of the future. For more information, visit www.xilinx.com.

27.     Xilinx is well-positioned for financial growth and the Merger Consideration fails to adequately compensate the Company's shareholders. It is imperative that Defendants disclose the material information they have omitted from the S-4, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Transaction.

28.     If the false and/or misleading S-4 is not remedied and the Proposed Transaction is consummated, Defendants will directly and proximately have caused damages and actual

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**No. 3:21-cv-00393**

economic loss (i.e., the difference between the value to be received as a result of the Proposed Transaction and the true value of their shares prior to the merger), in an amount to be determined at trial, to Plaintiff and the Class.

## II.     The Materially Incomplete and Misleading S-4

29.     On December 4, 2020, Defendants caused the S-4 to be filed with the SEC in connection with the Proposed Transaction.  The S-4 solicits the Company's shareholders to vote in favor of the Proposed Transaction.  Defendants were obligated to carefully review the S-4 before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the S-4 misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### *The Materiality of Financial Projections*

30.     A company's financial forecasts are material information a board relies on to determine whether to approve a merger transaction and recommend that shareholders vote to approve the transaction.  Here, the S-4 discloses "[i]n connection with the merger, Xilinx management shared its five-year long-range plan, which is referred to as the 'LRP.' The LRP is updated each year and reviewed with the Xilinx board of directors in the fiscal year-end timeframe, coinciding with Xilinx year-end procedures. Xilinx shared the LRP projections with AMD and the supporting financial advisors, including BofA Securities, Credit Suisse, DBO and Morgan Stanley, with certain minor variations in the LRP projections provided to AMD and the financial advisors for each of AMD and Xilinx . . . ." S-4 140.

31.     When soliciting proxies from shareholders, a company must furnish the information found in Schedule 14A (codified as 17 C.F.R. § 240.14a-101).  Item 14 of Schedule 14A sets forth the information a company must disclose when soliciting proxies regarding mergers and acquisitions.  In regard to financial information, companies are required to disclose

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

"financial information required by Article 11 of Regulation S-X[,]" which includes Item 10 of Regulation S-K. *See* Item 14(7)(b)(11) of 17 C.F.R. § 240.14a-101.

32.     Under Item 10 of Regulation S-K, companies are encouraged to disclose "management's projections of future economic performance that have a reasonable basis and are presented in an appropriate format." 17 C.F.R. § 229.10(b). Although the SEC recognizes the usefulness of disclosing projected financial metrics, the SEC cautions companies to "take care to assure that the choice of items projected is not susceptible of misleading inferences through selective projection of only favorable items." 17 C.F.R. § 229.10(b)(2).

33.     In order to facilitate investor understanding of the Company's financial projections, the SEC provides companies with certain factors "to be considered in formulating and disclosing such projections[,]" including:

> (i) When management chooses to include its projections in a Commission filing, *the disclosures accompanying the projections should facilitate investor understanding of the basis for and limitations of projections.* In this regard investors should be cautioned against attributing undue certainty to management's assessment, and the Commission believes that investors would be aided by a statement indicating management's intention regarding the furnishing of updated projections. *The Commission also believes that investor understanding would be enhanced by disclosure of the assumptions which in management's opinion are most significant to the projections or are the key factors upon which the financial results of the enterprise depend and encourages disclosure of assumptions in a manner that will provide a framework for analysis of the projection.*

> (ii) Management also should consider whether disclosure of the accuracy or inaccuracy of previous projections would provide investors with important insights into the limitations of projections. In this regard, *consideration should be given to presenting the projections in a format that will facilitate subsequent analysis of the reasons for differences between actual and forecast results.* An important benefit may arise from the systematic analysis of variances between projected and actual results on a continuing basis, since such disclosure may highlight for investors the most significant risk and profit-sensitive areas in a business operation.

17 C.F.R. § 229.10(b)(3) (emphasis added).

34.     Here, Xilinx's shareholders would clearly find complete and non-misleading financial projections material in deciding how to vote, considering that in making its recommendation that shareholders vote in favor of the Proposed Transaction, the Board

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

No. 3:21-cv-00393

1   specifically relied on the financial forecasts to determine that the "[M]erger [A]greement and the

2   [Merger] are fair to and in the best interests of Xilinx and its stockholders . . . ." S-4 64.

3       35.     As discussed further below, the non-GAAP financial projections here do not

4   provide Xilinx's shareholders with a materially complete understanding of the assumptions and

5   key factors considered in developing financial projections, which assumptions, factors and other

6   inputs the Board reviewed.

7           ***The Financial Projections Relied on by the Board***

8       36.     The S-4 discloses "[i]n connection with the merger, Xilinx management shared its

9   five-year long-range plan, which is referred to as the 'LRP.' The LRP is updated each year and

10  reviewed with the Xilinx board of directors in the fiscal year-end timeframe, coinciding with

11  Xilinx year-end procedures. Xilinx shared the LRP projections with AMD and the supporting

12  financial advisors, including BofA Securities, Credit Suisse, DBO and Morgan Stanley, with

13  certain minor variations in the LRP projections provided to AMD and the financial advisors for

14  each of AMD and Xilinx . . . ." S-4 140.

15      37.     The S-4 goes on to disclose, *inter alia*, forecasted values for Xilinx's projected

16  non-GAAP (Generally Accepted Accounting Principles) financial metrics for 2021 through 2025

17  for: (1) Adjusted EBITDA; (2) Adjusted Earnings Per Share; and (3) Unlevered Free Cash Flow,

18  but fails to provide (i) the line items used to calculate these non-GAAP metrics nor (ii) a

19  reconciliation of these non-GAAP projections to the most comparable GAAP measures. *Id.* at

20  142.

21      38.     The S-4 also discloses forecasted values for AMD's projected non-GAAP

22  financial metrics, adjusted by Xilinx, for 2021 through 2025 for: (1) Adjusted EBITDA,

23  unburdened by stock-based compensation expense ("SBC"); (2) Adjusted EBITDA, burdened by

24  SBC; (3) Adjusted EPS, unburdened by SBC; and (4) Unlevered Free Cash Flow, but fails to

25  provide (i) the line items used to calculate these non-GAAP metrics nor (ii) a reconciliation of

26  these non-GAAP projections to the most comparable GAAP measures.  *Id.* at 143.

27

28                                    - 11 -

39.     The S-4 defines Adjusted EBITDA as "earnings before interest, tax, depreciation and amortization, excluding the impact of acquisition-related expenses and other non-operating items, but including SBC expense." *Id.* at 142 n.1.  Nevertheless, the S-4 fails to reconcile Adjusted EBITDA to its most comparable GAAP measure or disclose the line items used to calculate Adjusted EBITDA, rendering the S-4 materially false and/or misleading.  *Id.* at 142.

40.     The S-4 defines Adjusted Earnings Per Share as "earnings per share adjusted to exclude the effects of acquisition-related expenses and other non-operating items, but including SBC expense."  *Id.* at 142 n.2.  Nevertheless, the S-4 fails to reconcile Adjusted Earnings Per Share to its most comparable GAAP measure or disclose the line items used to calculate Adjusted Earnings Per Share, rendering the S-4 materially false and/or misleading.  *Id.* at 142.

41.     The S-4 defines Xilinx's Unlevered Free Cash Flow ("UFCF") as "non-GAAP operating income less taxes, less change in net working capital, less capital expenditures, plus depreciation & amortization." *Id.* at 142 n.3. Nevertheless, the S-4 fails to reconcile UFCF to its most comparable GAAP measure or disclose the line items used to calculate UFCF, rendering the S-4 materially false and/or misleading.  *Id.* at 142.

42.     The S-4 defines Adjusted EBITDA, unburdened by SBC as "earnings before interest, tax, depreciation and amortization (excluding the impact of SBC), excluding acquisition-related expenses and other non-operating items." *Id.* at 143 n.1. Nevertheless, the S-4 fails to reconcile Adjusted EBITDA unburdened by SBC to its most comparable GAAP measure or disclose the line items used to calculate Adjusted EBITDA unburdened by SBC, rendering the S-4 materially false and/or misleading.  *Id.* at 143.

43.     The S-4 defines Adjusted EBITDA, burdened by SBC as "earnings before interest, tax, depreciation and amortization (including the impact of SBC expense), excluding acquisition-related expenses and other non-operating items." *Id.* at 143 n.2. Nevertheless, the S-4 fails to reconcile Adjusted EBITDA burdened by SBC to its most comparable GAAP measure or

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**No. 3:21-cv-00393**

1   disclose the line items used to calculate Adjusted EBITDA burdened by SBC, rendering the S-4

2   materially false and/or misleading.  *Id.* at 143.

3          44.    The S-4 defines Adjusted Earnings Per Share, unburdened by SBC as "EPS,

4   adjusted to exclude the effects of SBC."  *Id.* at 143 n.3.  Nevertheless, the S-4 fails to reconcile

5   Adjusted Earnings Per Share, unburdened by SBC to its most comparable GAAP measure or

6   disclose the line items used to calculate Adjusted Earnings Per Share, unburdened by SBC,

7   rendering the S-4 materially false and/or misleading.  *Id.* at 143.

8          45.    The S-4 defines AMD's Xilinx adjusted Unlevered Free Cash Flow as "Adjusted

9   EBITDA, unburdened by SBC, less SBC, which is treated as a cash expense, less taxes, change

10  in net working capital and capital expenditures." *Id.* at 143 n.4. Nevertheless, the S-4 fails to

11  reconcile UFCF to its most comparable GAAP measure or disclose the line items used to

12  calculate UFCF, rendering the S-4 materially false and/or misleading.  *Id.* at 143.

13         46.    Thus, the S-4's disclosure of these non-GAAP financial forecasts provides an

14  incomplete and materially misleading understanding of the Company's future financial prospects

15  and the inputs and assumptions for which those prospects are based upon.  It is clear that those

16  inputs and assumptions were in fact forecasted and utilized in calculating the non-GAAP

17  measures disclosed and relied on by the Board to recommend the Proposed Transaction in

18  violation of Section 14(a) of the Exchange Act.

19         47.    The financial projections disclosed on pages 142-143 of the S-4 violate Section

20  14(a) of the Exchange Act because: (i) the use of such forecasted non-GAAP financial measures

21  alone violates SEC Regulation G, as a result of Defendants' failure to reconcile those non-GAAP

22  measures to their closest GAAP equivalent or otherwise disclose the specific financial

23  assumptions and inputs used to calculate the non-GAAP measures; and (ii) they violate SEC

24  Regulation 14a-9 because they are materially misleading as without any correlation with their

25  GAAP equivalent financial metrics, shareholders are unable to discern the veracity of the

26  financial projections.

27

28

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

48.     As such, this information must be disclosed in order to cure the materially misleading disclosures regarding both the financial projections developed by the Company as well as the projections relied upon by the Company's financial advisors.

### The Financial Projections Violate Regulation G

49.     The SEC has acknowledged that potential "misleading inferences" are exacerbated when the disclosed information contains non-GAAP financial measures[1] and adopted Regulation G[2] "to ensure that investors and others are not misled by the use of non-GAAP financial measures."[3]

50.     Defendants must comply with Regulation G.  More specifically, the company must disclose the most directly comparable GAAP financial measure and a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.  This is because the SEC believes "this reconciliation will help investors . . . to better evaluate the non-GAAP financial measures . . . . [and] more accurately evaluate companies' securities and, in turn, result in a more accurate pricing of securities."[4]

51.     Moreover, the SEC has publicly stated that the use of non-GAAP financial measures can be misleading.[5]  Former SEC Chairwoman Mary Jo White has stated that the

---

[1]     Non-GAAP financial measures are numerical measures of future financial performance that exclude amounts or are adjusted to effectively exclude amounts that are included in the most directly comparable GAAP measure.  17 C.F.R. § 244.101(a)(1).

[2]     Item 10 of Regulations S-K and S-B were amended to reflect the requirements of Regulation G.

[3]     SEC, *Final Rule: Conditions for Use of Non-GAAP Financial Measures* (Jan. 22, 2003), *available at* https://www.sec.gov/rules/final/33-8176.htm ("SEC, *Final Rule*").

[4]     SEC, *Final Rule.*

[5]     *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into*

- 14 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**No. 3:21-cv-00393**

frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Xilinx included in the S-4 here) implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[6]

52.    The SEC has required compliance with Regulation G, including reconciliation requirements, in other merger transactions.  *Compare Youku Tudou Inc., et al.*, Correspondence 5 (Jan. 11, 2016) (Issuer arguing that Rule 100(d) of Regulation G does not apply to non-GAAP financials relating to a business combination),[7] *with Youku Tudou Inc., et al.*, SEC Staff Comment Letter 1 (Jan. 20, 2016) ("[The SEC] note[s] that your disclosure of projected financial information is not in response to the requirements of, or pursuant to, Item 1015 of Regulation M-A and is thus not excepted from Rule 100 of Regulation G.");[8] *see Harbin Electric, Inc.*,

---

*Profits*, N.Y. Times, Apr. 22, 2016, *available at* http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

[6]    Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), *available at* https://www.sec.gov/news/speech/chair-white-icgn-speech.html (emphasis added) (footnotes omitted).

[7]    *Available at* https://www.sec.gov/Archives/edgar/data/1442596/000110465916089133/filename1.htm.

[8]    *Available at* https://www.sec.gov/Archives/edgar/data/1442596/000000000016062042/filename1.pdf.

- 15 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**No. 3:21-cv-00393**

Correspondence 29 (Aug. 12, 2011) ("Pursuant to the requirements of Regulation G, we have

added a reconciliation of actual and projected EBIT to GAAP net income . . . .").[9]

53.     Compliance with Regulation G is mandatory under Section 14(a), and non-

compliance constitutes a violation of Section 14(a).  Thus, in order to bring the S-4 into

compliance with Regulation G, Defendants must provide a reconciliation of the non-GAAP

financial measures to their respective most comparable GAAP financial measures.

### The Financial Projections are Materially Misleading and Violate SEC Rule 14a-9

54.     In addition to the S-4's violation of Regulation G, the lack of reconciliation or, at

the very least, the line items utilized in calculating the non-GAAP measures render the financial

forecasts disclosed materially misleading, as shareholders are unable to understand the

differences between the non-GAAP financial measures and their respective most comparable

GAAP financial measures. Nor can shareholders compare the Company's financial prospects

with similarly situated companies.

55.     Such projections are necessary to make the non-GAAP projections included in the

S-4 not misleading for the reasons discussed above.

56.     As such, financial projections are plainly material, and shareholders would clearly

---

[9]     *Available at* https://www.sec.gov/Archives/edgar/data/1266719/000114420411046281/
filename1.htm.  *See also Actel Corp.*, SEC Staff Comment Letter 2 (Oct. 13, 2010) ("Opinion of
Actel's Financial Advisor, page 24 . . . This section includes non-GAAP financial
measures.  Please revise to provide the disclosure required by Rule 100 of Regulation G."),
*available at* https://www.sec.gov/Archives/edgar/data/907687/000000000010060087/filename
1.pdf.  *See also The Spectranetics Corp.*, SEC Staff Comment Letter 1 (July 18, 2017) ("Item 4.
The Solicitation or Recommendation Certain Spectranetics Forecasts, page 39 . . . [P]rovide the
reconciliation required under Rule 100(a) of Regulation G"), *available at* https://www.sec.gov/
Archives/edgar/data/789132/000000000017025180/filename1.pdf.  The SEC Office of Mergers
and Acquisitions applied Regulation G in these transactions, which reflects the SEC's official
position.  Any claim that the SEC has officially sanctioned the use of non-GAAP financial
forecasts for business combinations when the Board itself created and relied on such non-GAAP
forecasts to recommend a transaction such as the Proposed Transaction is incorrect. The SEC's
website provides certain unofficial guidance for certain matters, called Compliance and
Disclosure Interpretations ("C&DI's") which through the use of Q&As reflect the views of
particular SEC staff and on which certain issuers have in the past claimed an exemption from
Regulation G.  The SEC itself expressly disclaims C&DI's as they are not regulations that have
been reviewed by the SEC, and the SEC expressly states that they are not binding and should not
be relied on.  *See* www.sec.gov/divisions/corpfin/cfguidance.shtml.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF
THE SECURITIES EXCHANGE ACT OF 1934**

**No. 3:21-cv-00393**

want a complete and non-misleading understanding of those projections.

57.     In order to cure the materially misleading nature of the projections under SEC Rule 14a-9 as a result of the omitted information on pages 142-143, Defendants must provide a reconciliation table of the non-GAAP financial measures to the most comparable GAAP measures.

### The Materially Misleading Financial Analyses

58.     The summary of the valuation methodologies utilized by Morgan Stanley and BofA including the utilization of certain of the non-GAAP financial projections described above by Morgan Stanley and BofA, in connection with their valuation analyses, (S-4 118-19, 127-28) is misleading and in violation of Regulation 14a-9. The opacity concerning the Company's internal projections renders the valuation analyses described below materially incomplete and misleading, particularly as companies formulate non-GAAP metrics differently.  Once a S-4 discloses internal projections relied upon by the Board, those projections must be complete and accurate.

59.     With respect to Morgan Stanley's *Relative Public Trading Multiples Analysis*, the S-4 fails to disclose all of the calculated multiples. S-4 121-23.

60.     With respect to BofA's *Selected Public Trading Companies Analysis* for Xilinx, the S-4 fails to disclose all of the calculated multiples. *Id.* at 130-31.

61.     With respect to BofA's *Selected Precedent Transactions Analysis* for Xilinx, the S-4 fails to disclose all of the calculated multiples. *Id.* at 131-32.

62.     With respect to BofA's *Selected Public Trading Companies Analysis* for AMD, the S-4 fails to disclose all of the calculated multiples. *Id.* at 133.

63.     With respect to Morgan Stanley's *Relative Discounted Cash Flow Analysis*, the S-4 fails to disclose for both Xilinx and AMD: (1) the calculated UFCF for fiscal years 2026 through 2032; (2) the calculated terminal values; (3) the inputs used to calculate the weighted average cost of capital ranges; (4) the inputs and assumptions used to select the terminal

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

EBITDA multiple ranges; (5) the value of net debt; and (6) the number of fully diluted shares outstanding. *Id.* 123-24.

64.     With respect to BofA's *Discounted Cash Flow Analysis* for Xilinx, the S-4 fails to disclose: (1) the calculated UFCF for fiscal years 2026 through 2032; (2) the calculated terminal values; (3) the inputs used to calculate the weighted average cost of capital; (4) the inputs and assumptions used to select the perpetuity growth rate range; and (5) the number of fully diluted shares outstanding. *Id.* at 132

65.     With respect to BofA's *Discounted Cash Flow Analysis* for AMD, the S-4 fails to disclose: (1) the calculated UFCF for fiscal years 2026 through 2031; (2) the calculated terminal values; (3) the inputs used to calculate the weighted average cost of capital; (4) the inputs and assumptions used to select the perpetuity growth rate range; and (5) the number of fully diluted shares outstanding. *Id.* at 133-34.

66.     Since information was omitted, shareholders are unable to discern the veracity of Morgan Stanley and BofA's discounted cash flow analyses. Without further disclosure, shareholders are unable to compare Morgan Stanley and BofA's calculations with the Company's financial projections. The absence of any single piece of the above information renders Morgan Stanley and BofA's discounted cash flow analyses incomplete and misleading. Thus, the Company's shareholders are being materially misled regarding the value of the Company.

67.     As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's projections and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (Aug. 2006).  Such choices include "the appropriate discount rate, and the terminal value . . . ." *Id.*  As Professor Davidoff explains:

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value . . . . The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions . . . .

*Id.* at 1577-78 (footnotes omitted).

68. Therefore, in order for Xilinx shareholders to become fully informed regarding the fairness of the Merger Consideration, the material omitted information must be disclosed to shareholders.

69. In sum, the S-4 independently violates both (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial to their most directly comparable GAAP equivalent, and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading. As the S-4 independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the S-4 to garner votes in support of the Proposed Transaction from Xilinx shareholders.

70. Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff and the other members of the Class will not be able to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

71. Further, failure to remedy the deficient S-4 and consummate the Proposed Transaction will directly and proximately cause damages and actual economic loss to shareholders (i.e., the difference between the value to be received as a result of the Proposed Transaction and the true value of their shares prior to the merger), in an amount to be determined at trial, to Plaintiff and the Class.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and 17 C.F.R. § 244.100 Promulgated Thereunder)**

72.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

73.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any [S-4] or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

74.     As set forth above, the S-4 omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a).  SEC Regulation G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure.  17 C.F.R. § 244.100(a).

75.     The failure to reconcile the non-GAAP financial measures included in the S-4 violates Regulation G and constitutes a violation of Section 14(a).

76.     As a direct and proximate result of the dissemination of the false and/or misleading S-4 Defendants used to recommend that shareholders approve the Proposed Transaction, Plaintiff and the Class will suffer damages and actual economic losses (i.e., the difference between the value they will receive as a result of the Proposed Transaction and the true value of their shares prior to the merger) in an amount to be determined at trial and are entitled to such equitable relief as the Court deems appropriate, including rescissory damages.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**No. 3:21-cv-00393**

**COUNT II**

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

77.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

78.     SEC Rule 14a-9 prohibits the solicitation of shareholder votes in registration statements that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . . ." 17 C.F.R. § 240.14a-9(a).

79.     Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure . . . contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure . . . not misleading*." 17 C.F.R. § 244.100(b) (emphasis added).

80.     Defendants have issued the S-4 with the intention of soliciting shareholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the S-4, which fails to provide critical information regarding, amongst other things, the financial projections for the Company.

81.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as directors and/or officers, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the S-4 but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**No. 3:21-cv-00393**

82.     The Individual Defendants knew or were negligent in not knowing that the S-4 is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

83.     The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading.

84.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the S-4.  The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the S-4 or failing to notice the material omissions in the S-4 upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

85.     Xilinx is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the S-4.

86.     The misrepresentations and omissions in the S-4 are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

87.     As a direct and proximate result of the dissemination of the false and/or misleading S-4 Defendants used to recommend that shareholders approve the Proposed Transaction, Plaintiff and the Class will suffer damages and actual economic losses (i.e., the difference between the value they will receive as a result of the Proposed Transaction and the true value of their shares prior to the merger) in an amount to be determined at trial and are entitled to such equitable relief as the Court deems appropriate, including rescissory damages.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**No. 3:21-cv-00393**

1

2

3

## COUNT III
### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

4      88.      Plaintiff incorporates each and every allegation set forth above as if fully set forth

5    herein.

6      89.      The Individual Defendants acted as controlling persons of Xilinx within the

7    meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

8    directors and/or officers of Xilinx, and participation in and/or awareness of the Company's

9    operations and/or intimate knowledge of the incomplete and misleading statements contained in

10   the S-4 filed with the SEC, they had the power to influence and control and did influence and

11   control, directly or indirectly, the decision making of the Company, including the content and

12   dissemination of the various statements that Plaintiff contends are materially incomplete and

13   misleading.

14     90.      Each of the Individual Defendants was provided with or had unlimited access to

15   copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to and/or

16   shortly after these statements were issued and had the ability to prevent the issuance of the

17   statements or cause the statements to be corrected.

18     91.      In particular, each of the Individual Defendants had direct and supervisory

19   involvement in the day-to-day operations of the Company and, therefore, is presumed to have

20   had the power to control or influence the particular transactions giving rise to the Exchange Act

21   violations alleged herein and exercised the same.  The S-4 at issue contains the unanimous

22   recommendation of each of the Individual Defendants to approve the Proposed Transaction.

23   They were thus directly involved in preparing the S-4.

24     92.      In addition, as the S-4 sets forth at length, and as described herein, the Individual

25   Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The

26   S-4 purports to describe the various issues and information that the Individual Defendants

27

28

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**No. 3:21-cv-00393**

1 reviewed and considered.  The Individual Defendants participated in drafting and/or gave their

2 input on the content of those descriptions.

3       93.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

4 of the Exchange Act.

5       94.     As set forth above, the Individual Defendants had the ability to exercise control

6 over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by

7 their acts and omissions as alleged herein.  By virtue of their positions as controlling persons,

8 these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and

9 proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably

10 harmed.

11 **<u>PRAYER FOR RELIEF</u>**

12      **WHEREFORE**, Plaintiff prays for judgment and relief as follows:

13      A.     Declaring that this action is properly maintainable as a Class Action and

14 certifying Plaintiff as Class Representative and his counsel as Class Counsel;

15      B.     Enjoining Defendants and all persons acting in concert with them from

16 proceeding with the shareholder vote on the Proposed Transaction or consummating the

17 Proposed Transaction, unless and until the Company discloses the material information discussed

18 above which has been omitted from the S-4;

19      C.     Directing Defendants to account to Plaintiff and the Class for all damages

20 sustained as a result of their wrongdoing and to award damages arising from proceeding with the

21 Proposed Transaction;

22      D.     Awarding Plaintiff the costs and disbursements of this action, including

23 reasonable attorneys' and expert fees and expenses; and

24      E.     Granting such other and further relief as this Court may deem just and proper.

25 **<u>JURY DEMAND</u>**

26      Plaintiff demands a trial by jury on all issues so triable.

27

28

- 24 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF
THE SECURITIES EXCHANGE ACT OF 1934**

No. 3:21-cv-00393

Dated:  January 15, 2021

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By: */s/ Benjamin Heikali*
Benjamin Heikali, Bar No. 307466
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90024
Tel.: (424) 256-2884
Fax: (424) 256-2885
Email: bheikali@faruqilaw.com

*Counsel for Plaintiff*

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**

Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**No. 3:21-cv-00393**

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, Richard Stein ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed a draft complaint against Xilinx, Inc. ("Xilinx") and its board of directors and has authorized the filing of a complaint substantially similar to the one I reviewed.

2. Plaintiff selects Faruqi & Faruqi, LLP and any firm with which it affiliates for the purpose of prosecuting this action as my counsel for purposes of prosecuting my claim against defendants.

3. Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5. Plaintiff's transactions in Xilinx securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

6. In the past three years, Plaintiff has not sought to serve nor has served as a representative party on behalf of a class in an action filed under the federal securities laws, except as specified below:

7. Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing information is correct to the best of my knowledge.

Signed this 12th day of January, 2021.


_____
Richard Stein

| Transaction (Purchase or Sale) | Trade Date | Quantity |
|---|---|---|
| Purchase | 02/24/16 | 100 |
|  |  |  |
|  |  |  |